Richard F. Ensor (10877)
MICHAEL BEST & FRIEDRICH, LLP
6995 Union Park Center, Suite 100
Salt Lake City, Utah 84047
Telephone: (801) 833-0500
Facsimile: (801) 931-2500

Attorneys for Plaintiffs Contour, LLC and Contour IP Holding, LLC

---

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH – CENTRAL DIVISION**

---

| | |
|---|---|
| CONTOUR, LLC., a Utah limited liability company, and CONTOUR IP HOLDING, LLC, a Utah limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> iON WORLDWIDE INC., a Delaware corporation, and GIOVANNI TOMASELLI, a citizen of the Commonwealth of Australia and/or the Republic of Italy, <br><br> Defendants. | **COMPLAINT** <br><br> Case No. 2:16-cv-00138-DB <br><br> Judge Dee Benson |

---

Plaintiffs Contour, LLC and Contour IP Holding, LLC, by and through their undersigned

counsel, hereby complain of defendants as follows:

**INTRODUCTION**

1.      This is a case about Defendants' false statements and material omissions made to

induce Plaintiff Contour LLC to enter into a series of transactions with Defendants, including a

license of certain intellectual property.  The false façade painted by Defendants crumbled shortly

after the transactions had closed and evidence of Defendants' wrongdoing continued to mount.

And, because the agreements between the parties were founded on Defendants' misstatements,

1

Defendants subsequently failed to live up to their payment obligations as set forth in the relevant contract documents.  As a result, on February 2, 2016, Plaintiff Contour IP Holdings LLP terminated its license agreement with Defendant iON Worldwide Inc. and Plaintiff Contour LLC redeemed Defendant iON Worldwide Inc.'s ownership interest in Contour IP Holding LLC. Nevertheless, despite the termination of the License Agreement, Defendant iON Worldwide Inc. continues to manufacture and sell products using Contour IP Holding LLC's intellectual property.  Plaintiff Contour IP Holding LLC therefore brings contract and patent infringement claims against Defendant iON Worldwide Inc.  Plaintiff Contour LLC asserts contract and fraud claims for Defendants' wrongful conduct prior to the execution of the transaction documents and Defendant iON's subsequent breach of the same.

2.      Plaintiff Contour, LLC ("Contour") is a Utah limited liability company with its principal place of business in Utah County, Utah.  None of the members of Contour are citizens of the State of Delaware or the State of New Jersey.

3.      Contour IP Holding, LLC ("Contour IP Holding") is a Utah limited liability company with its principal place of business in Utah County, Utah.  None of the members of Contour IP Holding are citizens of the State of Delaware or the State of New Jersey.

4.      Defendant iON Worldwide Inc. ("Defendant iON") is a Delaware corporation with its principal place of business in Moorestown, New Jersey.  Defendant iON was formerly a Delaware limited liability company with its principal place of business in Moorestown, New Jersey.

5.      Defendant Giovanni Tomaselli ("Defendant Tomaselli") is a citizen of the Commonwealth of Australia and/or the Republic of Italy.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendants, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and under 28 U.S.C. § 1367.

7.      This Court also has subject matter jurisdiction over this action under 28 U.S.C. § 1331 in that the claims alleging patent infringement arise under the laws of the United States and under 28 U.S.C.§ 1338 in that the federal courts are vested with exclusive jurisdiction over claims of patent infringement.

8.      This Court has supplemental jurisdiction over the claims arising under state law because they form part of the same case or controversy as the federal law claims over which this Court has original jurisdiction.

9.      This Court has personal jurisdiction over Defendants because they have transacted business in the State of Utah in connection with the subject matter of this Complaint and because they have caused harm to Plaintiffs in the State of Utah.

10.     Defendants are thus subject to jurisdiction in this state pursuant to Utah's long arm statute, Utah Code § 78B-3-205(1) and (3), and they have sufficient minimum contacts to satisfy the due process clause of the United States Constitution.

11.     Venue is proper in this district under 28 U.S.C. § 1391(a) and (b), as a substantial part of the events giving rise to the claims occurred in this district.

12.     Additionally, Defendant iON has consented to jurisdiction and venue in the Federal Courts of Utah in the License Agreement.

## GENERAL ALLEGATIONS

13.     Contour is a leader in the action camera industry and, accordingly, holds numerous patents and other intellectual property in regard to its cameras and accessories.

14.     Defendant iON is also in the action camera industry, manufacturing and selling certain products.  Defendant Tomaselli is Defendant iON's Chief Executive Officer and Director.

15.     In Spring 2015, Defendant iON was seeking a capital infusion from certain investors who were reluctant to fund Defendant iON without access to Contour's intellectual property.

16.     Defendant iON also viewed a potential transaction with Contour as providing Defendants with certain stature in the action camera industry which, unbeknownst to Contour, Defendants planned to use to leverage their obligations to certain creditors.

17.     Defendants iON and Tomaselli therefore proposed that Contour and Defendant iON form some type of joint venture.

18.     Numerous meetings occurred between Contour and Defendants, and information was exchanged, including Defendant iON's financial statements being provided to Contour.

19.     On June 5, 2015, Contour and Defendant iON entered into a Contribution Agreement (hereinafter "the Contribution Agreement"), which was signed by Defendant Tomaselli for Defendant iON and James Harrison for Contour.

20.     Pursuant to the Contribution Agreement, among other terms, Contour would contribute certain assets to Contour IP Holding and become a member in Contour IP Holding owning 50.1%.  Contour would also contribute significant inventory and other assets to Defendant iON.

21.     Pursuant to the Contribution Agreement, among other terms, Defendant iON would assume certain liabilities, provide Contour with a 40% ownership interest in Defendant iON, and become a 49.9% member in Contour IP Holding.

22.     Three additional documents were executed in conjunction with the Contribution Agreement: (1) the iON Worldwide, LLC Second Amended and Restated Limited Liability Company Agreement ("iON Second Amended Agreement"); (2) an operating agreement for Contour IP Holding, LLC ("Contour IP Holding Operating Agreement"); and (3) a license agreement between Contour IP Holding and Defendant iON (the "License Agreement").

23.     On June 5, 2015, the iON Second Amended Agreement was executed, providing (among other terms) Contour with a forty percent ownership interest in Defendant iON.  Of particular relevance to this dispute, the iON Second Amended Agreement defined the term "Minimum Equity Transaction" as:

> "Minimum Equity Transaction" means an investment to the Company and or one or more of its subsidiaries that (A) raises $7,500,000 in equity for the Company; (b) does not require the outstanding indebtedness of the Company and its subsidiaries from its members or any third party to be converted into equity or to be extended past their current terms; (C) dilutes all Unitholder equally; (D) does not give preferential treatment among the Class A-1 Unitholders and Class A-2 Unitholders; (E) does not dilute the Units held by the Members on the date of the Minimum Equity Transaction to less than 50% of the Units held by the Members on a fully diluted basis immediately after the closing of the Minimum Equity Transaction; (F) allocates $2,000,000 of the proceeds from the Minimum Equity Transaction to be paid to Contour IP Holding, LLC to be used for the enforcement and patent litigation costs by Contour IP Holding, LLC in connection with the Contour Patents; and (G) results in a post-money valuation of the Company of a minimum of $55 million.

24.     On June 5, 2015, Contour IP Holding's Operating Agreement was executed, setting forth Contour IP Holding's membership interest as follows: Contour was issued 501 Class A Units; Defendant iON was issued 499 Class B Units.  The Contour IP Holding

Operating Agreement was signed by Defendant Tomaselli for Defendant iON and Ken Kaufman

for Contour.

25.     On June 5, 2015, Contour IP Holding entered into the License Agreement

whereby Defendant iON was provided with the right to use certain Contour IP Holding patents

relating to various camera technologies, subject to certain terms and conditions.

26.     License Agreement Section 3.4.1 is entitled "License Fee" and states that:

LICENSEE shall pay LICENSOR the sum of $2,000,000 either in cash to
LICENSOR, by credit against accounts payable assumed and paid by LICENSEE
under the Contribution Agreement relating to the GoPro Litigation, or as payment
of LICENSOR's litigation costs in connection with the enforcement of the
Contour Patents by LICENSOR against infringement by any third party.  During
each calendar month that the License is effective, and until a total of two million
U.S. Dollar ($2,000,000) has been paid pursuant to this Section 3.4.1, LICENSEE
shall pay the lessor of: 1) One hundred thousand U.S. Dollars ($100,000); 2)
LICENSOR's actual costs invoiced in the prior calendar month in connection
with the enforcement and maintenance of the Contour Patents in the GoPro
Litigation; and 3) the balance of the $2,000,000 payable pursuant to this Section
3.4.1; provided, however, that the monthly amounts due under this Section 3.4.1
shall accrue but not become due until the earlier: of (a) ten (10) days after the
closing of the Minimum Equity Transaction (defined in Section 3.7(vi) herein); or
(b) December 31, 2015.

27.     License Agreement Section 3.7 is entitled "Termination by Licensor" and states

that:

Upon the occurrence of any of the following conditions with respect to
LICENSEE or any of its Subsidiaries, any exclusive rights granted to LICENSEE
and Subsidiaries under this Agreement shall be converted to non-exclusive rights
and LICENSOR may terminate this Agreement by providing notice to the
LICENSEE:  (i)  LICENSEE or any of its Subsidiaries become insolvent . . . .

28.     License Agreement Section 3.7 further states that:

If Licensee does not complete the Minimum Equity Transaction, as that term is
defined in the Second Amended and Restated Limited Liability Company
Agreement of LICENSEE, on or before December 31, 2015, any exclusive rights
granted to LICENSEE and Subsidiaries under this Agreement shall automatically

6

and with no further action required by Licensor be converted to non-exclusive rights.

29.     In late June 2015, Defendant iON completed the "Minimum Equity Transaction" by raising over nine million dollars from investors.  Defendant iON raised additional funds in July, August, and September 2015.

30.     Defendant iON failed to make all the payments required under License Agreement Section 3.4.1.

31.     In October 2015, Contour and Defendant iON agreed to amend the Contour IP Holding Operating Agreement (hereinafter the "Contour IP Operating Agreement Amendment"), which was signed by Defendant Tomaselli for Defendant iON and James Clarke for Contour.

32.     The Contour IP Operating Agreement Amendment states that "iON was required to make certain payments to Contour IP Holding pursuant to Section 3.4.1 of the License Agreement, which iON has not made."

33.     The Contour IP Operating Agreement Amendment further states that "the following is hereby added as Section 6.8 of the Operating Agreement:

> Upon any failure by iON to make a payment to the Company required by Section 3.4.1 of the License Agreement, the Company may redeem all Units held by iON for $1.00 (the "Redemption Right").  The Company shall give written notice of its exercise of the Redemption Right to iON, and shall pay the purchase price of the applicable units to iON.  No further action or notice shall be required of the Company or iON to redeem any Units subject to a Redemption Right.  Until iON satisfies all of its payment obligations under Section 3.4.1 of the License Agreement, iON may not Transfer any interest in its Units."

34.     At the same time, in October 2015, Contour IP Holding and Defendant iON entered into an amendment to the License Agreement (hereinafter "the License Agreement Amendment") pursuant to which the payment schedule under the License Agreement, among

other terms, was changed.

35.     The License Agreement Amendment was signed by Defendant Tomaselli for

Defendant iON and James Clarke for Contour IP Holding.

36.     Specifically, the License Agreement Amendment stated that Section 3.4.1 of the

License Agreement was deleted in its entirety and replaced with the following:

> LICENSEE shall pay LICENSOR the sum of $1,882,743 either in cash to
> LICENSOR or as payment of LICENSOR's litigation costs in connection with the
> enforcement of the Contour Patents by LICENSOR against infringement by any
> third party.  During each calendar month that the License is effective, beginning
> with October 2015 and until a total of $1,882743 has been paid pursuant to this
> Section 3.4.1, LICENSEE shall pay the lesser of: 1) One hundred thousand U.S.
> Dollars ($100,000); 2) LICENSOR's actual costs incurred in connection with the
> enforcement and maintenance of the Contour Patents in the GoPro Litigation; and
> 3) the balance of the $1,882,743 payable pursuant to this Section 3.4.1; provided,
> however, that the monthly amounts due under this section 3.4.1 shall accrue but
> not become due until the earlier: of (a) ten (10) days after the closing of an
> investment in LICENSEE and/or one or more of its subsidiaries that raises
> $10,000,000 in equity for LICENSEE; or (b) December 31, 2015.

37.     Defendant iON, having been provided with a second chance to make the required

payments under the License Agreement, still failed to make the payments as set forth in Section

3.4.1 of the License Agreement (as amended).

38.     As a result of this failure to make payment, on February 2, 2016 and pursuant to

Section 6.8 of the Contour IP Operating Agreement (as amended), Contour redeemed all

ownership units held by Defendant iON in Contour IP Holding.

39.     At the same time, pursuant to Section 3.7 of the License Agreement, Contour IP

Holding terminated the license agreement (as amended) with Defendant iON.

40.     Defendant iON, however, continues to manufacture and sell products using

Contour IP Holding's patents despite the termination of the License Agreement.

41.     Contour has also learned that Defendant iON's financial statements – provided to Contour prior to the execution of the Contribution Agreement and the three related documents – were false and inaccurate in many respects.[1]

42.     Specifically, Defendants iON and Tomaselli intentionally underreported an account payable liability to the Manchester Football Club, identifying such amount in Defendant iON's financial statements as approximately $200,000.00 when the true account payable liability was approximately $1,000,000.00.  Defendants likewise misrepresented this amount in their disclosure statement attached to the Contribution Agreement.

43.     Defendants iON and Tomaselli repeated the same fraudulent conduct in regard to an account payable liability to the Twenty-Ten Group.  Defendant iON's financial statements represented the account payable liability to the Twenty-Ten Group as approximately $200,000.00 when the true account payable obligation was approximately $1,000,000.00.  Defendants likewise misrepresented this amount in their disclosure statement attached to the Contribution Agreement.

44.     Defendants iON and Tomaselli also made false oral representations to Contour to induce the execution of the Contribution Agreement and the related documents.  For example, in the weeks prior to the execution of the Contribution Agreement, Defendant Tomaselli told Contour and Ken Kaufman that Defendant iON had terminated its contract with a company called Headwaters and, accordingly, Defendant iON's resulting liability to Headwaters was zero.

---

[1] In Contribution Agreement Section 3.04, Defendant iON represented that the financial statements previously provided to Contour had been "prepared in accordance with generally accepted accounting principles applied on a consistent basis throughout the periods covered, except as set forth on Part 3.04 of the Disclosure Schedule, and present fairly the financial position of [Defendant iON] in all material respects on the respective dates thereof and the results of operations and cash flows of the Company for the periods covered thereby."

This statement was false; in reality, Defendants had not terminated Defendant iON's contract with Headwaters or addressed the resulting liability, which Headwaters claimed was approximately $1,000,000.00.  Defendants likewise misrepresented this amount in their disclosure statement attached to the Contribution Agreement.

45.     Defendants iON and Tomaselli further misrepresented to Ken Kaufman and Contour that Defendant iON had "net 60 payment terms" with its manufacturer.  This statement, which Defendants repeated over and over again in the weeks prior to the execution of the Contribution Agreement, was directly relevant to Defendant iON's cash flow cycle, but was false.  No such "net 60 day" payment terms existed.

46.     Defendants iON and Tomaselli likewise misrepresented to Ken Kaufman and Contour, in the weeks prior to the execution of the Contribution Agreement, that Defendant iON had paid all its payroll taxes and the appropriate payroll forms had been filed.  This statement was false as well.  Payroll taxes had not been paid nor had the appropriate forms been filed, resulting in subsequent tax payments and tax penalties.

47.     In sum, Defendant iON and Tomaselli knowingly, willingly, and repeatedly made false statements to Contour to provide a false appearance of Defendant iON's operations and financial situation.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment Against Defendant iON Regarding the License Agreement)

48.     Contour IP Holding realleges the previous paragraphs as though fully set forth herein.

49.     A genuine controversy exists between Contour IP Holding and Defendant iON regarding whether the License Agreement has been terminated.

50.     Contour IP Holding are entitled to declaratory judgment, pursuant to 28 U.S.C. § 2201, as to their rights under the License Agreement (as amended).

51.     Specifically, Contour IP Holding is entitled to a judgment declaring that:

    a.  Defendant iON has no rights under the License Agreement (as amended).

    b.  The License Agreement was properly terminated on February 2, 2016.

    c.  Defendant iON is ordered to stop selling or manufacturing any items covered by the Licensing Agreement.

## SECOND CAUSE OF ACTION
### (Patent Infringement Against Defendant iON)

52.     Contour IP Holding realleges the previous paragraphs as though fully set forth herein.

53.     Contour IP Holding is the owner by assignment of U.S. Patent No. 8,890,954 ("the '954 patent") which issued on November 18, 2014 and is entitled "Portable Digital Video Camera Configured for Remote Image Acquisition Control and Viewing".  A copy of the '954 patent is attached hereto as Exhibit A;

54.     Contour IP Holding is the owner by assignment of U.S. Patent No. 8,792,041 ("the '041 patent") which issued on July 29, 2014 and is entitled "Control Switch for a Portable Digital Video Camera".  A copy of the '041 patent is attached hereto as Exhibit B.

55.     The '954 and '041 patents were both licensed to Defendant iON under the Licensing Agreement.

56.     Defendant iON has sold and continues to sell products that are covered by the claims of the '954 and '041 patents, including but not limited to the iON Air Pro 3 with Wifi PODZ ("the Accused Device").

57.     Despite the termination of the Licensing Agreement, Defendant iON continues to

sell the Accused Device, without the permission or other authorization of Contour IP Holding.

58.     Defendant iON's sale of the Accused Device infringes at least claim 1 of the '954

patent.

59.     Defendant iON's sale of the Accused Device infringes at least claim 14 of the

'041 patent.

60.     As a result of Defendant iON's infringement of the '954 and '041 patents,

Contour IP Holding has been irreparably harmed and that harm will continue unless enjoined by

this Court.

61.     As a result of Defendant iON's infringement of the '954 and '041 patents,

Contour IP Holding has sustained damages and is entitled to an award of money damages against

Defendant iON in an amount to be determined at trial, but in no event less than a reasonable

royalty and/or Contour IP Holding's lost profits.

## THIRD CAUSE OF ACTION
### (Breach of License Agreement Against Defendant iON)

62.     Contour IP Holding realleges herein each of the paragraphs set forth above.

63.     The License Agreement constitutes a valid contract entered into between Contour

IP Holdings and Defendant iON.

64.     Contour IP Holdings fully performed under the License Agreement.

65.     As set forth above, Defendant iON materially breached the License Agreement.

66.     As a result of Defendant iON's breach of the License Agreement, Contour IP

Holdings has sustained damages and is entitled to an award of money damages against

Defendant iON in an amount to be proved at trial, but in no event less than $75,000.00, plus

incurred pre-judgment and post-judgment interest, and any other relief the Court deems equitable.

## FOURTH CAUSE OF ACTION
### (Breach of Duty of Good Faith and Fair Dealing Against Defendant iON)

67.     Contour IP Holding realleges herein each of the paragraphs set forth above.

68.     Inhering in the nature of the License Agreement, Defendant iON owed to Contour IP Holding an implied duty of good faith and fair dealing.

69.     The duty of good faith and fair dealing obligated Defendant iON to refrain from actions that would intentionally destroy or injure Contour IP Holding's right to receive the fruits of the Agreements in light of the agreed common purpose of the License Agreement and Contour IP Holding's reasonable expectations.

70.     As alleged above, Defendant iON willfully acted unfairly and breached the implied covenant of good faith and fair dealing.

71.     As a result of Defendant iON's breach of the covenant of good faith and fair dealing, Contour IP Holding has been damaged in an amount in excess of $75,000.00 as will be further established at trial, plus incurred pre-judgment and post-judgment interest, and any other relief the court deems equitable.

## FIFTH CAUSE OF ACTION
### (Securities Fraud Against Defendants iON and Tomaselli)

72.     Contour realleges the previous paragraphs as though fully set forth herein.

73.     As set forth in paragraphs 41 through 47 above, Defendants iON and Tomaselli made untrue statements of material fact, and also omitted to state material facts necessary in order to make certain statements made not misleading, in regard to the offer and transfer of

13

securities as set forth in the Contribution Agreement and the related transaction documents.

74.     In doing so, Defendants iON and Tomaselli engaged in acts, practices, and courses of business that operated as a fraud upon Contour.

75.     Defendant iON made such material misstatements, and material omissions, with scienter and with an intent to deceive Contour.

76.     Contour relied upon Defendants' material misstatements and material omissions, and such reliance was the proximate cause of Contour's damages, which amount is in excess of $75,000.00 as will be established at trial.   Contour further seeks that the Contribution Agreement be declared null and void.

## SIXTH CAUSE OF ACTION
**(Common Law Fraud Against Defendants iON and Tomaselli)**

77.     Contour realleges the previous paragraphs as though fully set forth herein.

78.     As set forth in paragraphs 41 through 47 above, Defendants iON and Tomaselli made false representations to Contour.

79.     Defendants iON and Tomaselli made such statements knowing that such statements were false and with an intent to induce Contour into entering into the Contribution Agreement.

80.     Contour reasonably relied upon Defendants iON and Tomaselli's false representations and suffered damages as a result, in an amount in excess of $75,000.00 as will be further established at trial.  Contour further seeks that the Contribution Agreement be declared null and void.

## SEVENTH CAUSE OF ACTION
### (Breach of Contract Against Defendant iON)

81.     Contour realleges herein each of the averments set forth above.

82.     The Contribution Agreement constitutes a valid contract entered into between

Contour and Defendant iON.

83.     The Agreement provided, among other terms, that Defendant iON's financial

statements present fairly the financial position of Defendant iON in all material respects on the

respective dates thereof and the results of operations and cash flows of the Company for the

periods covered thereby.

84.     Contour fully performed under the Agreements.

85.     As set forth above, Defendant iON materially breached the Agreement.

86.     As a result of Defendant iON's breach of the Agreement, Contour has sustained

damages and is entitled to an award of money damages against Defendant iON in an amount to

be proved at trial, but in no event less than $75,000.00, plus incurred pre-judgment and post-

judgment interest, and any other relief the court deems equitable.

## EIGHTH CAUSE OF ACTION
### (Breach of Duty of Good Faith and Fair Dealing Against Defendant iON)

87.     Contour realleges herein each of the paragraphs set forth above.

88.     Inhering in the nature of the Contribution Agreement, Defendant iON owed to

Contour an implied duty of good faith and fair dealing.

89.     The duty of good faith and fair dealing obligated Defendant iON to refrain from

actions that would intentionally destroy or injure Contour's right to receive the fruits of the

Agreements in light of the agreed common purpose of the Contribution Agreement and

Contour's reasonable expectations.

90.     As alleged above, Defendant iON willfully acted unfairly and breached the

implied covenant of good faith and fair dealing.

91.     As a result of Defendant iON's breach of the covenant of good faith and fair

dealing, Contour has been damaged in an amount in excess of $75,000.00 as will be further

established at trial, plus incurred pre-judgment and post-judgment interest, and any other relief

the court deems equitable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Contour, LLC and Contour IP Holding, LLC pray for relief as

follows:

1.     On the First Cause of Action against Defendant iON for a declaratory judgment as

set forth in paragraph 51 above.

2.     On the Second Cause of Action against Defendant iON:

   a.   A preliminary and permanent injunction prohibiting Defendant iON from

        making, using, selling, or offering to sell the Air Pro 3 with Wifi PODZ or any

        other product that infringes the '954 and/or '041 patents;

   b.   Damages of a reasonable royalty or lost profits, to be trebled, pursuant to 35

        U.S.C. § 284; and

   c.   An order declaring this case to be exceptional and an award of Plaintiffs'

        reasonable attorneys' fees under 35 U.S.C. § 285

3.     On the Third Cause of Action against Defendant iON for damages in an amount

to be proven at trial, but in an amount that exceeds $75,000.00;

4.     On the Fourth Cause of Action against Defendant iON for damages in an amount to be proven at trial, but in an amount that exceeds $75,000.00;

5.     On the Fifth Cause of Action against Defendants iON Tomaselli for damages in an amount to be proven at trial, but in an amount that exceeds $75,000.00, and including punitive damages;

6.     On the Sixth Cause of Action against Defendants iON and Tomaselli for damages in an amount to be proven at trial, but in an amount that exceeds $75,000.00, and including punitive damages;

7.     On the Seventh Cause of Action against Defendant iON for damages in an amount to be proven at trial, but in an amount that exceeds $75,000.00;

8.     On the Eighth Cause of Action against Defendant iON for damages in an amount to be proven at trial, but in an amount that exceeds $75,000.00; and

9.     For such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 19th day of February 2016.

MICHAEL BEST & FRIEDRICH, LLP


/s/ Richard F. Ensor
Attorneys for Plaintiffs


Plaintiff's Address:

Contour LLC and Contour IP Holding, LLC
c/o Michael Best & Friedrich, LLP
6995 Union Park Center, Suite 100
Salt Lake City, Utah 84047