Richard F. Ensor (10877)
MICHAEL BEST & FRIEDRICH, LLP
6995 Union Park Center, Suite 100
Salt Lake City, Utah 84047
Telephone: (801) 833-0500
Facsimile: (801) 931-2500

Attorneys for Plaintiffs Contour, LLC and Contour IP Holding, LLC

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF UTAH – CENTRAL DIVISION

| | |
|---|---|
| CONTOUR, LLC, and CONTOUR IP HOLDING, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>iON WORLDWIDE INC., and GIOVANNI TOMASELLI,<br><br>Defendants. | **PLAINTIFF CONTOUR IP HOLDING, LLC'S MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Case No. 2:16-cv-138<br><br>Judge Dee Benson<br><br>**[REDACTED - NONCONFIDENTIAL]** |

Plaintiff Contour IP Holding, LLC ("Contour IP Holding"), by and through its undersigned counsel, hereby moves this Court for the issuance of a Temporary Restraining Order ("TRO").

**STATEMENT OF RELIEF SOUGHT AND GROUNDS FOR MOTION**

Contour IP Holding seeks a temporary restraining order, pursuant to Fed. R. Civ. P. 65, restraining Defendant iON Worldwide, Inc. ("Defendant iON") from manufacturing or selling any items or products that use Contour IP Holding's intellectual property or patents, as set forth in the now terminated License Agreement between Contour IP Holding and Defendant iON. Specifically, Contour IP Holding requests that Defendant iON and its subsidiaries be restrained and enjoined from manufacturing or selling the following products: iON Airpro, WIFI, iON

Airpor LITE WIFI, Wifi Podz, Airpro 2, Airpro3, Contour +2, SnapCam, SnapCam LE, and iON The Home, as each of these products use Contour IP Holding's intellectual property. Contour IP Holding further requests an order requiring Defendant iON to instruct its retailers that the above identified products should not be sold.

As grounds for this motion, Contour IP Holding states that the License Agreement between Contour IP Holding and Defendant iON, which provided Defendant iON with rights to use certain Contour IP intellectual property in the above identified products, was terminated on February 2, 2016. Defendant iON therefore has no legal right to manufacture or sell products containing Contour IP Holding's intellectual property. Defendant nevertheless continues to do so.

## INTRODUCTION

This case involves ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Defendant iON Worldwide Inc. ("Defendant iON"). As set forth in the Complaint, in June 2015, Defendant iON fraudulently induced Contour LLC and Contour IP Holding to enter into a series of written agreements, including a License Agreement. Under that License Agreement, Defendant iON was allowed to sell certain products, identified as "the Licensed Products," that used Contour IP Holding's intellectual property. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Defendant iON nevertheless continues to manufacture and sell items that were subject to the now terminated License Agreement with Contour IP Holding.

Contour IP Holding therefore seeks injunctive relief because Defendant iON's improper

use of Contour IP Holding's intellectual property, in violation of the Licensing Agreement, is causing irreparable harm to Contour IP Holding and must be stopped. And, as set forth below, Contour IP Holding has a strong likelihood of success on its claims as there can be no dispute that Defendant iON ███████████████████████████████████ and therefore the License Agreement was properly terminated. Moreover, the harm to Contour IP Holding outweighs any damage the TRO may cause Defendant iON as Defendant has no right to manufacture or sell products using Contour IP Holding's intellectual property; this is especially true ███████████████████████████████████████████████████████████

███████████████████████████ Finally, a TRO will help, not harm, the public interest.

**FACTUAL BACKGROUND**

1. Contour IP Holding holds numerous patents and other intellectual property for action cameras and accessories. See http://contour.com/patents. Defendant iON is also in the action camera industry, manufacturing and selling certain products. See Declaration of James Clarke at ¶ 3, a true and correct copy of which is attached hereto as Exhibit 1.

2. In Spring 2015, Defendant iON was seeking a capital infusion from certain investors who were reluctant to fund Defendant iON without access to Contour IP Holding's intellectual property. Id. at ¶ 4 (Clarke Decl.). ████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
██████████████████████████████████████████████ Id. at ¶ 4 and Exhibit A thereto (Clarke Decl.).

3

3. On June 5, 2015, Contour IP Holding entered into the License Agreement whereby Defendant iON was provided with the right to use certain Contour IP Holding patents relating to various camera technologies, subject to certain terms and conditions. The License Agreement stated that "Licensed Products means products, the manufacture, use, sale, offer for sale, or impact of which, in the absence of this Agreement, would infringe at least one claim of a Contour patent." Id. at ¶ 5 and Exhibit B thereto (Clarke Decl.).

4. Defendant iON failed to make payments required under License Agreement Section 3.4.1. Accordingly, in October 2015, Contour IP Holding and Defendant iON entered into an amendment to the License Agreement pursuant to which the payment schedule, among other terms, was changed. Defendant iON, having been provided with a second chance to make the required payments under the License Agreement, still failed to make the payments as set forth in Section 3.4.1 of the License Agreement (as amended). Id. at ¶ 6 and Exhibit C thereto (Clarke Decl.).

5. License Agreement Section 3.7 states:

Termination by Licensor. Upon the occurrence of any of the following conditions with respect to LICENSEE or any of its Subsidiaries, any exclusive rights granted to LICENSEE and Subsidiaries under this Agreement shall be converted to non-exclusive rights and LICENSOR may terminate this Agreement by providing notice to the LICENSEE:

(i) LICENSEE or any of its Subsidiaries become insolvent.

6. Defendant iON did not make the payments required by the License Agreement ███████████████████████████████████████

7. ████████████████████████████████████████████
████████████████████████████████████████████



Id. at ¶ 7 and Exhibit D thereto (Clarke Decl.).

8. On December 16, 2015, ███████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████ Id. at ¶ 8 and Exhibit E thereto (Clarke Decl.).

9. Two days later, on December 18, 2015, ███████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████ Id. at ¶ 9 and

Exhibit F thereto (Clarke Decl.).

10. ███████████████████████████████████ On January 26, 2016,

Defendant iON held another board of directors meeting, ███████████████

███████████████████████████████████████████████████████

████████ Id. at ¶ 10 and Exhibit G thereto (Clarke Decl.).

11. The following day, on January 27, 2016, ███████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

Id. at ¶ 11 and Exhibit H thereto (Clarke Decl.).

12. On February 2, 2016, pursuant to Section 3.7 of the License Agreement, Contour IP Holding terminated the license agreement (as amended) with Defendant iON. Id. at ¶ 12 and Exhibit I thereto. Defendant iON did not formally respond to Contour IP Holding's termination letter.

13. Defendant iON continues to manufacture and sell products using Contour IP Holding's intellectual property and patents that were subject to the License Agreement, including the following products: iON Airpro, iON Airpro Lite, Wifi Podz, Airpro 2, Airpro 3, Contour +2, SnapCam, SnapCam LE, and iON The Home. Id. at ¶ 13. As Defendant iON stated in Federal Court in Delaware, "Wireless features of the Contour+2 and the iON Air Pro, Speed-Pro, CamoCam, and SnapCam series of video cameras allowing each camera's video images and settings to be remotely capture, previewed and controlled are described in the '954 and/or '694 Patents and set forth in one or more claims of the '954 Patent and in one or more claims of the '694 Patent." See Ex. 2 attached hereto at ¶ 17 (Complaint filed in U.S. Dist. Ct. for Delaware, Case No. 1:15-cv-1108). Contour IP Holding is the owner of the '954 and '694 Patents. Id. at ¶ 4.

## LAW AND ARGUMENT

District courts possess "equitable discretion" in deciding "whether to grant or deny injunctive relief." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394, 126 S. Ct. 1837, 1841, 164 L. Ed. 2d 641 (2006). "[S]uch discretion must be exercised consistent with traditional principles of equity." Id. Issuance of injunctive relief is appropriate on the following grounds:

To prevail on a motion for a preliminary injunction, the movant must establish that four equitable factors weigh in its favor: (1) it is substantially likely to succeed on the merits; (2) it will suffer irreparable injury if the injunction is denied; (3) its threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest.

*Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009). These equitable factors each weigh in favor of Contour.

### I. CONTOUR IP HOLDING WILL SUFFER IRREPARABLE INJURY IF THE COURT DOES NOT ISSUE A TRO.

"[T]he party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003) (quotations omitted). Economic loss usually does not, in and of itself, constitute irreparable harm. Id.

Here, Contour Holding IP is facing two types of irreparable harm. ███████████
████████████████████████████████████████████████
██████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████████
████████████████████████████████████
██████████████████████████████████████
████████████████████████████████████████

███████████████████████

Second, Defendant iON's continued use of Contour IP Holding's intellectual property and patented technologies, despite termination of the License Agreement, results in Contour IP Holding's loss of control of its intellectual property. This also constitutes irreparable harm. In *Won-Door Corp. v. Cornell Iron Works, Inc.*, 981 F. Supp. 2d 1070, 1077 (D. Utah 2013), this Court, analyzing federal circuit law, held that irreparable harm occurs where two companies compete and one product uses the other company's intellectual property. Specifically:

> A finding of infringement does not create a presumption of irreparable harm. Nevertheless, the patent holder's right to exclude is an important factor in the court's analysis. This is because **exclusivity is closely related to the fundamental nature of patents as property rights [and] is an intangible asset that is part of a company's reputation. Therefore, where two companies are in competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions**." Among those harms is the need to lower its own price to compete against its own invention. Calculation of the resulting loss greatly complicates the measurement of damages.

Id. at 1077 (internal citations and quotations omitted and emphasis added).

In the present case, Contour IP Holding is a leader in the action camera industry and, accordingly, holds numerous patents and other intellectual property. See SOF No. 1 above. Pursuant to the parties' Licensing Agreement, Defendant iON was provided with the right to use certain Contour IP Holding patents in Defendant's "Licensed Products" under certain conditions. See SOF No. 3 above. But Defendant iON failed to make the required payments ███████ ███████ On February 2, 2016, Contour IP Holding terminated the License Agreement (as amended) with Defendant iON. See SOF No. 12 above. Defendant iON continues to manufacture and sell the "Licensed Products" using Contour IP Holding's patents despite the termination of the License Agreement. See SOF No. 13 above. Contour IP Holding therefore

8

has no adequate remedy at law, and the only meaningful remedy available is a temporary restraining order.

## II. CONTOUR IP HOLDING HAS A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.

To determine whether Contour IP Holding has a substantial likelihood of success on its breach of contract action under the License Agreement, the Court must analyze the four breach of contract elements: "(1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *Bair v. Axiom Design, L.L.C.*, 2001 UT 20, ¶ 21, 20 P.3d 388 (Utah 2001) (citing *Nuttall v. Berntson*, 83 Utah 535, 30 P.2d 738, 741 (Utah 1934)).

Here, Contour properly terminated the License Agreement. Defendant iON, however, continues to manufacture and sell products using Contour IP Holding's patents despite the termination of the License Agreement. In doing so, Defendant iON has breached the License Agreement. Contour has established a likelihood of success on the merits.

## III. CONTOUR IP HOLDING'S HARM OUTWEIGHS ANY DAMAGE THE TRO MAY CAUSE DEFENDANT ION.

The balance of harms element is closely related to the irreparable harm element, and courts routinely hold that "when a party knowingly takes actions that increase the potential for harm if an injunction is ordered against them, courts give those harms little weight in the balancing test." *Bad Ass Coffee*, 636 F. Supp. 2d at 1251 (citing *Davis v. Mineta*, 302 F.3d 1104, 1116 (10th Cir. 2002)); *see Acceleration Prods. v. Arikota, Inc.*, 2014 U.S. Dist. LEXIS 111550, at *6 (D. Utah Aug. 7, 2014) (holding that "any harm to defendants is self-inflicted."). Here, although Defendant iON might suffer some harm if the injunction issues, the balance of harms

weighs in favor of Contour IP Holding because Defendant iON chose to continue to manufacture and sell items using Contour IP Holding's intellectual property despite the Licensing Agreement's termination. Consequently, Defendants' harm is self-inflicted and the balance of harms favors Contour IP Holding.

## IV. A TRO WILL HELP, NOT HARM, THE PUBLIC INTEREST.

Here, Defendant iON voluntarily entered into the License Agreement and enjoyed the benefits of the agreement. Public policy favors the enforcement of such commercial contracts. *See Nilson v. JPMorgan Chase Bank, N.A.*, 690 F. Supp. 2d 1231, 1258-59 (D. Utah 2009) (public policy favors enforcement of commercial contracts that have been freely entered into between sophisticated parties.); *Neways Inc. v. Mower*, 543 F. Supp. 2d 1277, 1290 (D. Utah 2008) (same). Additionally, in intellectual property cases, the public interest normally weighs in favor of the issuance of an injunction to protect intellectual property because it is in the public interest to uphold such protections. *See, e.g., Autoskill Inc. v. National Educational Support Systems, Inc.*, 994 F.2d 1476, 1499 (10th Cir. 1993) (copyright). Because the public interest weighs in favor of the enforcement of lawful contractual obligations and issuance of injunctive relief to protect intellectual property, this factor weights in favor of issuing a TRO.

## CONCLUSION

Plaintiffs respectfully request that the Court issue a TRO as set forth in the "Statement of Relief Sought" section above.

DATED this 10th day of March 2016.

                MICHAEL BEST & FRIEDRICH, LLP

                /s/ Richard F. Ensor
                Attorneys for Plaintiffs